### HICKEY v. WILLIAMS, District Judge.

Circuit Court of Appeals, Eighth Circuit. November 10, 1927.

No. 305.

Courts ⟨⟩406(2)—Appellate court's decision that order in former action barred defendants' right to sue in state court held to preclude amendment of answer.

Where, on appeal from an order granting motion to stay proceedings in federal court suit to enjoin suit in state court until determination of suit in state court, Circuit Court of Appeals, after fully considering merits and all claims presented by defendants, determined that an order in a former action was a complete bar to defendant's action, reversed the stay order, and remanded case "for further proceedings in accordance with the views herein expressed," *held*, that all the issues were determined, and trial court could only permanently enjoin state court suit, and was not authorized to permit amendment of defendants' answer to permit additional defenses, because mandate did not in terms direct final decree on the merits for plaintiff.

On Petition for Writ of Mandamus.

Petition by Egbert J. Hickey against R. L. Williams, Judge of the District Court of the United States for the Eastern District of Oklahoma, to compel enforcement of the decree and mandate of the Circuit Court of Appeals in 9 F.(2d) 498. Petition granted.

O. D. Olmstead, of Winner, S. D., for petitioner.

John H. Miley, of Oklahoma City, Okl. (Burford, Miley, Hoffman & Burford, of Oklahoma City, Okl., on the brief), for respondent.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

STONE, Circuit Judge. This is a mandamus proceeding against Judge Williams having for its alleged purpose enforcement of the decree and mandate of this court in the case of Hickey v. Johnson, 9 F.(2d) 498.

Daniel Sam was an enrolled adopted citizen of the Seminole Tribe and as such received allotment of 120 acres of land in section 1, township 7 north, range 7 east, Indian base and meridian, Seminole county, Oklahoma. Of this land, the N. W. ¼ of the S. W. ¼ (40 acres) was set off as his homestead. Two patents issued in 1912, one covering the N. W. ¼ of the S. W. ¼ as a homestead, and the other covering the remaining 80 acres. Prior to receiving these patents, Sam attempted to convey portions or all of this land to Ben C. Burris and E. F. Jeffries by separate deeds in 1906 and 1907. In January, 1909, the United States filed a bill against Burris, Jeffries, and others to set aside these deeds on the ground that their execution was void because made before the patents issued in violation of the Seminole allotment agreement. To that bill, Burris and Jeffries filed demurrers based upon various grounds among which were that complainant was not entitled to the relief, that there was no equity in the bill and that insufficient facts were stated to constitute a cause of action. Thereafter, this demurrer was sustained and the bill dismissed as to Burris and Jeffries, the court making no statement of the grounds of the demurrer upon which such orders were based. There was no appeal from these orders and they have long become final.

In 1918, the heirs of Daniel Sam filed an action in the state court to annul the same deeds, alleging as a ground therefor that Daniel Sam was of Indian blood and, therefore, incompetent to execute valid conveyances at the time the Burris and Jeffries deeds were executed by him. A trial was had in the state court resulting in favor of the defendants. This judgment was appealed to the state Supreme Court, which reversed the state trial court and ordered a new trial in an opinion which forecast a victory for the plaintiffs.

In 1923, Hickey, who had succeeded to the titles of Burris and Jeffries and was a defendant in the state court suit, filed a bill in the United States court praying an injunction against further proceedings in the state court and from further interference by the plaintiffs therein in his quiet and peaceful possession of the land or in the assertion of any right, title or interest as described in the complaint in the state court, on the ground

that the earlier action in the United States court had adjudicated the title in the grantors of Hickey and that such injunctions were necessary to protect that decree. The defendants answered thereto in November, 1923, denying Hickey's title to any of the lands; denying the validity of the original conveyances by Daniel Sam on the ground that the lands were then inalienable because of his Indian blood. In April, 1924, these defendants filed therein a motion to stay proceedings in that cause until the matter could be determined in the action in the state court. That motion was sustained and an order entered staying the proceedings. An appeal was taken from that order and determined in an opinion by Judge Van Valkenburgh, reported in 9 F. (2d) 498. In this last action the lands involved were the three quarter-quarter sections, including the N. W. ¼ of the S. W. ¼ which had been patented to Daniel Sam as his homestead allotment. This court held that the order in the earlier action by the United States amounted to a final adjudication against Sam and his successors in title and covered, not only the ground alleged in that action (that the deeds by Sam were made before the patents issued), but all other grounds for avoiding the deeds which might have been set up at that time, one of such being that urged by defendants, to wit, that the land was inalienable because Sam was of Indian blood. The conclusion of this court was that the trial court had erred in granting the stay order and that "the order of the trial court must be reversed and the case remanded for further proceedings in accordance with the views herein expressed."

No petition for rehearing; no application for modification of the opinion or decree and no bill of review has ever been filed to that opinion which was entered November 4, 1925. The term of this court at which that opinion was filed; the order thereon entered; and the mandate upon such order issued has long since expired and the action of this court therein has become final. The mandate was sent down to the trial court and duly spread upon the records thereof and, thereafter, a motion filed by Hickey to have an order entered in execution thereof. A form of entry was prepared by counsel for Hickey, presented to opposing counsel and an opportunity accorded by the court to both sides to file briefs. Briefs were filed by the counsel for Hickey, none were filed by opposing counsel and the court, supposing that opposing counsel had abandoned the matter, entered the order as requested. However, the court shortly ascertained that opposing coun-

sel, on account of serious illness, had overlooked the matter and in response to motions by such counsel set aside the order and granted leave to such counsel to amend the answer which they had theretofore filed in the cause before the appeal from the stay order was entered. Later, the court modified this leave by restricting the amendments to the point or matter that the homestead allotment had never been included in the suit by the United States nor in any of the conveyances to Burris or Jeffries or any one else from whom Hickey deraigned title.

Thereupon a petition for mandamus was filed in this court by Hickey; a show cause order issued and a response filed by Judge Williams. The claim of petitioner is that the opinion of this court determined that all of the issues as to title had been adjudicated in the action by the United States; that the trial court could do but one thing under the opinion and mandate which was to permanently enjoin the state court action; that to permit an amendment of the answer by the allegation of a new defense which was known to the defendants at the time they file their answer before the appeal would mean a relitigation of the matter which had been determined in this court and would defeat and depart from the opinion of this court and the mandate in pursuance thereof. The answering contention is that the appeal was from the order entered on the motion to stay proceedings, and not upon the merits, and left open the trial upon the merits and, therefore, the right to amend the answer and present additional defenses because the mandate did not, in terms, direct the court to enter a final decree on the merits in favor of plaintiff.

The opinion of this court (9 F.[2d] 498) considered the title to all of the three quarter-quarter sections as being involved and no question of the inclusion of the homestead in the earlier action by the United States or that such homestead was not covered by the deeds to Burris and to Jeffries was raised in the Hickey v. Johnson litigation. This court (page 499) said:

"The case at bar is based upon the action of the District Court for the Eastern District of Oklahoma, equity No. 444, in sustaining a demurrer to a complaint filed by the United States against one Ben C. Burris and E. F. Jefferies and others, through whom the title of the appellant, Hickey, is deraigned, to cancel and hold void certain deeds from one Daniel Sam to said Burris and Jefferies to the northest quarter of the southwest quarter, the southwest quarter of the southwest quarter, and the northwest quarter of the south-

west quarter, all in section 1, township 7 north, range 7 east, Indian base and meridian, Seminole county, Okl."

Further on (page 501) the court says:

"It will be seen, therefore, that the two actions [that by the United States and the one pending in the state court] involve, as their gist, the same right; that is, to the property acquired from Daniel Sam by Burris and Jefferies and their successors in title."

Again, at page 503, the court says:

"In the case at bar the claims are identical, to wit, the cancellation of the same deeds and later ones depending upon the validity of those conveyances. The claim or demand involves the same property; the claim for relief being predicated merely upon another matter which might have been offered for the same purpose."

Defendants staked their case on the sole ground that all of the land was inalienable because Daniel Sam was of Indian blood. In the opinion of this court (9 F.[2d] 498), it is clearly stated what the issues were there. One of the points there urged and discussed and determined was the scope of the decree in the earlier case filed by the United States and it was held that the decree in the earlier case closed all defenses, which were then presentable, affecting any of this land. In considering the case, this court was compelled to and did fully go into the merits of the action because the motion to stay proceedings contained the substance of all of the merits pleaded in the answer. In sustaining its jurisdiction in that appeal, this court (page 501) said:

"In the instant case an injunction was prayed, and the action of the court below was tantamount to the refusal of that injunction, and amounted to a final disposition of the controversy."

Not only did the order of the trial court (sustaining the motion to stay proceedings in that court until the state court had acted) amount "to a final disposition of the controversy" but the opinion of this court, on appeal from that order, was equally final. The court there (page 501) stated the questions to be decided as follows:

"The questions to be decided, therefore, are: First, whether the judgment in equity cause No. 444 is a bar to the present action in the state court; second, whether, if such bar, it has been waived, and therefore may no longer be interposed; and, third, whether, in any event, and to what extent, this court may grant the relief prayed."

It determined that "the judgment in equity

cause No. 444" was a complete bar to the present action in the state court; that such defense had not been waived; that the trial court had power to grant the injunctive relief sought in protection of its earlier judgment in equity cause No. 444.

Apparently, the only thing left for the trial court to do was to set aside its order of stay and to grant the injunction prayed. When such action is attempted, defendants present the claims that there has never been any trial of the injunction suit upon the "merits" and that they have the right not only to try out that matter upon the defenses set up in their answer at the time of the former appeal, but to add to that answer yet another defense to the effect that the judgment in equity No. 444 did not cover title to a portion (the homestead) of the land involved in the state court action and in the injunction proceeding. It has been shown above that this court, on the former appeal, regarded the issues presented by the existing answer as involved in the motion to stay and that it intended, by its opinion, to determine the final character of the judgment entered in No. 444. To permit a hearing upon the issues presented by the existing answer would be a vain thing in the light of the opinion handed down by this court. To allow a hearing upon the new defense now sought to be set up could, at most, result in a holding that the judgment in No. 444 was not intended to and did not cover the homestead because the deeds from Sam did not purport to convey the homestead. Whatever the effect of those deeds, it is clear that the grantees and their successors have *claimed* the deeds did convey the homestead and the litigation both in the state court action and in the injunction proceeding in the trial court and the appeal therefrom in this court have proceeded throughout upon the basis and assumption that the deeds did convey the homestead. The contest has been to remove the cloud of these claims and conveyances from the homestead just as upon the surplus land. No such distinction ever appeared or was suggested until the present amendment to the answer was offered. In short, the defendants chose their battle ground and fought out the issue as to homestead and surplus alike. They pursued this to a disastrous finish resulting from the appeal to this court. Having entirely failed as to all of the land in that appeal, they now seek to save the homestead by a complete change of front and upon a theory not before heard of in the entire litigation.

We think this cannot be done. If the defendants were dissatisfied with the opinion of this court because it included and covered the homestead, they could have presented that matter by a petition for rehearing or for modification. No such steps were taken and the decree of this court entered upon that opinion has become final. There must be an end to litigation. This defense as to the homestead was clearly no new discovery by defendants. They cannot use part of their known defenses and when finally defeated thereon bring up others, held in reserve, and have another chance with them.

We think the trial court was mistaken in its view that the mandate permitted any trial on the merits and, therefore, any amendment to change or add to the issues on the merits. The command of the mandate was "for further proceedings in accordance with the views" expressed in the opinion. The views expressed in the opinion were that the judgment in equity No. 444 was binding; that the state suit involved the same matters determined by that judgment; that an injunction to prevent such relitigation in another forum should be granted. To fit such views to the then existing situation in the trial court, it was necessary only to set aside the order of stay, to deny the motion for stay and to grant the injunction in appropriate form.

The situation was not without confusion and there is not and could not be a suggestion that the learned trial judge has had any desire except to carry out the mandate of this court. However, it is evident that this litigation has aroused much feeling between the parties and that neither side will omit to take legitimate advantage of any situation which may arise. Therefore, we deem it prudent to grant the petition for the writ and order that the writ issue requiring respondent to set aside any and all orders now existing which may interfere with granting a permanent injunction against the further prosecution of the case in the state court and to grant such injunction in appropriate form.